IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00111-KDB-DCK

| | |
|---|---|
| **COURTNEY HILL,** | |
| Plaintiff, | |
| v. | **ORDER** |
| **INVESTORPLACE MEDIA, LLC,** | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant InvestorPlace Media, LLC's ("InvestorPlace") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 22). The Court has carefully considered this motion and the parties' briefs in support of their respective positions. For the reasons discussed below, the Court will **DENY** the motion.

I. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

1

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see Twombly*, 550 U.S. at 555 (A claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements."). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted). In other words, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

On or about January 6, 2022, Plaintiff Courtney Hill began receiving text messages from Defendant InvestorPlace, an independent financial research firm that provides subscription-based financial analysis and investment services. Doc. No. 21 at ¶¶ 2-3, 11. Plaintiff alleges he had opted out of text alerts from InvestorPlace on July 22, 2021, and received a text message that same day confirming that Plaintiff would be "unsubscribed from all text messages from InvestorPlace" and "receive no additional messages." *Id.* at ¶ 12. Following this exchange, the text messages from InvestorPlace had ceased for approximately six months. However, in January 2022, they resumed. *Id.* at ¶ 13. Plaintiff received additional text messages in December 2022, January 2023, and April 2023. *Id.* at ¶¶ 11-13.

2

The text messages from InvestorPlace provided "cryptocurrency alerts," notifications of investor informational events, and links to articles and stock recommendations published by the Defendant. *Id.* at ¶ 11. Importantly, Plaintiff alleges that most of the text messages he received contain a link that directs the viewer to a specific page of Defendant's website hosting the briefing or article discussed.[1] *Id.* at ¶¶ 11, 15. The rest simply urge the recipient to visit the Defendant's website for more details. *Id.* at ¶ 11. According to Plaintiff, these text messages in practical effect "purport to offer free advice, [but] they are in fact a product 'pitch' the purpose of which is to call attention and persuade consumers to purchase Defendant's investment analysis services" through memberships marketed on its website. *Id.* at ¶¶ 15-16. In short, Plaintiff alleges that Defendant sought to profit by sending these unsolicited text messages because people "are persuaded to visit Defendant's website and purchase subscriptions." *Id.* at ¶ 24.

Plaintiff filed his putative class action[2] Complaint in September 2023, alleging that Defendant's unsolicited text messages violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act")). Doc. No. 1 at ¶ 1. After Defendant filed a motion to dismiss, Plaintiff filed his Amended Complaint. Doc. Nos. 16, 21. In response to the Amended Complaint, Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint, which is now before the Court and ripe for review. Doc. No. 22.

---

[1] In the Amended Complaint, Plaintiff does not describe with specificity the web pages linked to the text messages he received. While the Court finds that Plaintiff has met his limited burden to plead a plausible claim, he will of course be required to establish in discovery that the linked web pages reflect the commercial activity sufficient to satisfy the statutory definition of telemarketing as described below.

[2] Nothing in this Order is intended to convey any view by the Court as to the appropriateness of this matter proceeding as a class action.

3

## III. DISCUSSION

"Enacted in 1991, the TCPA was a response by Congress to the reactions of American consumers over intrusive and unwanted phone calls." *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 161 (4th Cir. 2019). The statute "generally bars robocalls to cell phones," *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020), because it "prohibits any person, absent the prior express consent of a telephone-call recipient, from, 'mak[ing] any call … using any automatic telephone dialing system … to any telephone number assigned to a paging service or cellular telephone service,'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). "[I]t is undisputed" that a text message "qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Id*.

Section 227(c)(5) of the Act permits a party to file suit if they have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." It is an affirmative defense "that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." § 227(c)(5). The relevant regulation states:

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d). The regulation then lists the minimum requirements for sufficient procedures. § 64.1200(d)(1)-(6).

The lone issue raised by Defendant in this motion is whether Plaintiff has plausibly alleged the text messages he received meet the regulatory definition of "telemarking." InvestorPlace argues that the text messages do not "on their face" encourage recipients to purchase anything and its self-described "general participation in commercial activity" cannot establish that any text messages sent by Defendant were for the purpose of encouraging a commercial transaction. Doc. No. 23 at 8. Plaintiff responds that Defendant's definition of telemarking is erroneously "myopic" and that the text messages constitute telemarketing because they were intended to promote Defendant's paid products/services despite nominally offering "free" resources. Doc. No. 25 at 5.

A. **Telemarking under the TCPA**

The TCPA's implementing regulations broadly define "telemarketing" as "the initiation of a telephone call or message *for the purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13) (emphasis added). Thus, Plaintiff can plausibly allege InvestorPlace's text messages meet the regulatory definition of telemarketing if their purpose was to promote a commercial transaction with the company.

In evaluating whether text communications constitute telemarketing, "[c]ourts are divided as to whether this Court's inquiry should be limited to the four corners of the texts themselves or whether other facts can be considered to divine the Defendant's intent." *Wilcox v. MarketPro S., Inc.*, No. CV SAG-23-2364, 2023 WL 8806696, at *3 (D. Md. Dec. 20, 2023) (collecting cases and ultimately concluding courts should look beyond the plain language of the text messages). The Court believes a broader review is appropriate. Because the "Court does not see a basis in the TCPA, its regulations, or otherwise to limit its 'intent' or 'purpose' inquiry to the plain language of [Defendant's] text messages," it will examine both the plain meaning and other facts of the case.

5

*Id.*; *see also Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 80 F.4th 466, 477 (4th Cir. 2023) (examining both the plain text of the fax and allegations that the defendant profited when its fax led recipients to download the proffered "free" eBook).

The alleged communications offer "crypto investor network alerts," "exclusive video[s]" and "Power Portfolio briefing[s]" covering investment opportunities, links to "latest research," and links to various presentations. Doc. No. 21 at ¶ 11. Each text message directs the recipient either to visit Defendant's website for more information or includes a link to a specific webpage presumably maintained by Defendant for the Plaintiff to use. *Id.* Although the text portion of the communications may not directly encourage Plaintiff to purchase any services, Plaintiff's allegations assert that the embedded links plausibly tell a different, more mercantile story.

Each text message Plaintiff received includes either a direction to visit the InvestorPlace website for more information or a link to allow the recipient to go directly to a website that presumably belongs to InvestorPlace. *See* Doc. No. 21 at ¶ 11. On its website, InvestorPlace sells memberships to consumers that allow access to its stock/investment advice. *Id.* at ¶ 16. It also offers "Premium Services" for sale. *Id.* As Plaintiff has alleged, "[a]lthough the text messages purport to offer free advice, they are in fact a product 'pitch' the purpose of which is to call attention and persuade consumers to purchase Defendant's investment analysis services." *Id.* at ¶ 15.

In *PDR Network*, the Fourth Circuit held that a fax constitutes an "unsolicited advertisement" under §§ 227(a)(5) and (b)(1)(C) of the TCPA if it is "commercial in nature." 80 F.4th at 472 (quoting *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 224 (6th Cir. 2015)). It accordingly held that the plaintiff had plausibly alleged the necessary commercial nexus because the defendant earned a commission every time a recipient of the fax

downloaded the "free" eBook it promoted. *Id.* at 475. Similarly, in *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, the Second Circuit ruled that an unsolicited fax promoting a free seminar plausibly violates § 227(b)(1)(C) because seminar invitees were doctors and the host was a pharmaceutical company who "would presumably hope to persuade [the invited doctors] to prescribe its drugs to patients." 847 F.3d 92, 97 (2d 2017).

Although these cases involve a different section of the Act, (§ 227(b)(1)(C)), the fundamental issue of a "commercial nexus" is similar and the Court finds their reasoning persuasive. Here, Plaintiff has plausibly alleged that the text messages offering investment advice were a pitch meant to draw recipients to Defendant's website where they presumably would be encouraged to purchase a subscription. Accordingly, the Court finds these text messages do not merely provide informational content but instead plausibly direct the recipient to specific websites that provide free investment advice as a part of an effort to market the purchase of a subscription from InvestorPlace. In other words, "[t]his is not the rare case in which free products are distributed via [text] 'without hope of financial gain.'" *PDR Network*, 883 F.3d at 476. Thus, the Court finds these text messages were plausibly sent for the "purpose of encouraging the purchase or rental of, or investment in, property, goods, or services…." 47 C.F.R. § 64.1200(f)(13).

Therefore, having found that the challenged text messages plausibly meet the regulatory definition of telemarketing, the Court will **DENY** Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 22) is **DENIED**; and

2. This case shall **proceed toward a decision on the merits of Plaintiff's claim** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED**.

Signed: March 11, 2024

Kenneth D. Bell
United States District Judge